Christine H. Chung, PLLC 

---

November 11, 2020

**Via ECF**

Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Room 1050
New York, New York 10007-1312

                Re:    <u>United States v. Victor Mones Coro</u>
                        19 Cr. 144 (AKH)

Dear Judge Hellerstein:

      This case represents another "sorry chapter" of late, gravely prejudicial, and resource-wasting discovery productions by the government in this district. Opinion and Order 2, 25 & n.6, *United States v. Jain*, No. 19-cr-59 (PKC) (S.D.N.Y. Oct. 13, 2020), ECF No. 143 (ordering senior staff of U.S. Attorney's Office and New York Field Office of the Federal Bureau of Investigation to meet and confer on "corrective measures" to address "inexcusable" and systemic failures that resulted in eve-of-trial production of 5 terabytes of electronic data).

      Since June, the government has supplemented discovery in this case a staggering 16 times, producing widening concentric circles of information about a now-discredited Confidential Source. Mr. Mones, who is incarcerated, has adjourned his sentencing six times, for the past six months, to await these government supplementations and review them. The productions have contained *Brady/Giglio* material—information material to reducing Mr. Mones' sentence. This Court has already permitted Mr. Mones to withdraw his guilty plea, with government consent, because of the late productions.[1]

      The government attempted late last month to make the last and by far the largest of any its productions in this case—more than 5.7 terabytes of compressed data seized from the workplace of the Confidential Source with whom the government has been working since early 2017 (the "Sixteenth Production"). As described below, in doing so, the government missed the final discovery deadline of October 23, 2020. Instead, the government delivered, two days after the deadline, a hard drive

---

[1] October 28 Status Conference Transcript ("Oct. 28 Tr.") at 13:11-13, ECF No. 131 ("obviously this late production by the government is a chunk of evidence that you have not had an opportunity to consider").

Honorable Alvin K. Hellerstein                                               November 11, 2020

containing raw computer "images," the contents of which could not be reviewed upon receipt. This is the only of the 16 post-plea productions in which the government did this. Effectively, to try to meet the deadline, the government changed and compromised its prior production practice and foisted on Mr. Mones the considerable time and work necessary to make the production reviewable.

The hard drive late-delivered to counsel on October 25, 2020 also turned out to contain confidential material regarding other investigations that the Department of Homeland Security ("DHS") had mistakenly copied onto the drive. Defense counsel thus had to halt analyzing the drive to notify the government of its mistake and permit it to claw back the confidential information.

Mr. Mones should not be in the Hobson's choice of delaying even further his sentencing or taking the time (and considerable expense) to process and review the Sixteenth Production. Indeed, it is difficult to see how the government could claim any need to rely on information it only saw fit to collect, from its own Source, more than a year *after* indicting Mr. Mones. To bring his proceeding to a conclusion, on fair terms, Mr. Mones seeks the following discovery sanctions:

1) An opportunity to plead guilty at the earliest time convenient to the Court, because Mr. Mones continues to accept responsibility and intends to re-enter a plea of guilty (albeit now without a plea agreement that constrains his arguments regarding role);
2) A firm sentencing date in January 2020 and the ordering of the preparation of an expedited PSR; and
3) That the government be precluded from relying on any information contained in the Sixteenth Production at sentencing.

## Factual Background

A.   The Government's Pre- and Post-Plea Productions

In his prior motion for discovery sanctions, which this Court denied without prejudice, Mr. Mones set forth the timetable of the government's pre- and post-plea discovery productions, among other facts relevant to this application.[2] Without repeating all of the factual background here, this case was indicted in March 2019, and the government stated that it had concluded discovery in September 2019.

Mr. Mones pled guilty in November 2019, to conspiring to violate U.S. sanctions by brokering private passenger air travel for his co-defendants Tareck Zaidan El Aissami Maddah ("El Aissami"), and Samark Jose Lopez Bello, after OFAC designated those individuals as Specially Designated Narcotics Traffickers in early

---

[2] Mones Motion for Discovery Sanctions ("Mones First Sanctions Motion") at 8 & 10, ECF No. 122; Oct. 28 Tr. at 14:18-19; October 28 Order, ECF No. 129.

Honorable Alvin K. Hellerstein                                          November 11, 2020

2017.  There is no allegation or charge that Mr. Mones, who owned a small Florida-based charter company, facilitated money laundering or narcotics trafficking.

In late June of this year, after a long hiatus, the government began making supplemental productions, both to Mr. Mones after he pled guilty, and to co-defendant Michols Orsini Quintero, during his pre-trial proceedings.  These productions began just weeks after the government conceded fatal *Brady/Giglio* violations in *United States v. Ali Sadr Hashemi Nejad*, No. 18-cr-244 (AJN), and was ordered by Judge Nathan to answer questions regarding whether those violations were intentional.[3]

Tables showing the dates and volumes of the discovery produced by the government before and after Mr. Mones pled guilty are annexed hereto as Exhibit A.

Nearly all of the material in the post-plea productions was either about Alejandro Javier Marin, the Confidential Source who was charged in late September with lying to federal agents,[4] or was information taken from Mr. Marin or maintained by Mr. Marin or his Florida-based business, My Jet Saver.  Mr. Marin had been working under DEA or DHS supervision since early 2017.

B.    The *Brady/Giglio* Material Within the Post-Plea Productions

The government's *Brady/Giglio* obligations at the sentencing stage are to produce evidence material to "reduc[ing] the penalty," whether directly or because the information impeaches the government's proof.  *Brady v. Maryland*, 373 U.S. 83, 88 (1963); Oct. 28 Tr. at 25:2-12, 27:9-12 (government must disclose "all information favorable to an accused that is material either to guilt or to punishment") (citing Due Process Protections Act); U.S.A.M. § 9-5.001(D)(3) (2018) (obligating AUSAs to disclose "exculpatory and impeachment information that casts doubt upon proof of an aggravating factor" no later than Court's initial PSR).[5]

The government's post-plea productions contained evidence material to mitigating Mr. Mones' sentence.  Among other things, Mr. Mones learned for the first time about conspirators in Venezuela of whom he had no prior knowledge and who were confidants of the lead co-defendant, El Aissami, who is the former Vice-President of Venezuela.  The government conceded only after collecting information from Mr. Marin after Mr. Mones' plea that Mr. Mones had not participated in illegally

---

[3] *United States v. Sadr*, No. 18-cr-224 (AJN), 2020 WL 3057755, at **2-3 (S.D.N.Y. June 9, 2020).

[4] *See* Arrest Warrant and Complaint, *United States v. Marin*, No. 20-MJ-3659 (JG) (S.D. Fla. Sept. 21, 2020), ECF No. 1.

[5] While this motion focuses on *Brady/Giglio* violations, because the materiality of the late-produced information to Mr. Mones' sentencing is clear, the government also produced post-plea Rule 16 material.

3

transferring millions of dollars in cash from Venezuela to the United States. This concession demonstrated the lack of evidentiary basis for a statement this Court made, when denying Mr. Mones bail, that Mr. Mones was a danger to the community because he had a "history of participating in illegal transfers of money."[6] The government had also provided the U.S. Probation Office with the incorrect information that Mr. Mones "directed" multiple illegal money transfers in a total amount of millions of dollars, before the initial PSR was issued.

It was also only after Mr. Mones' plea that the government sought and obtained confirmation  Before Mr. Mones' plea the government had denied the relevance of Mr. Mones' [redacted][7] The information obtained post-plea tended to demonstrate that Mr. Mones was less dangerous and culpable than his co-defendants and did not commit his crime out of disloyalty to the United States.

C.  The Extreme Lateness of the Post-Plea Productions

The government's post-plea productions made available, in increments, information that either had been collected or should have been collected from Mr. Marin beginning in 2017—including, for example, chats that Mr. Marin conducted with government agents starting in 2017 and communications and business records made or maintained by Mr. Marin or his business throughout the conspiracy.[8] Mr. Marin was acting as an agent of the government; his records were therefore in the government's constructive possession and thus their affirmative obligation to collect.[9]

Mr. Mones had also specifically criticized Mr. Marin's reliability and credibility, and sought information impeaching Mr. Marin, as early as the spring of 2020. Exhibit B (Mones Discovery Letters dated May 11, 2020, at 2, and July 2, 2020 at 2). Instead of promptly responding to requests for historical documents, the government repeatedly interviewed Mr. Marin, prompting him to provide statements supportive of government theories. It was only in August 2020, after Mr. Mones

---

[6] Order Denying Bail at 2 (March 27, 2020), ECF No. 73.

[7] The text has been redacted of material in accordance with a prior agreement with the government.

[8] Mones First Sanctions Motion at 10-12.

[9] *E.g.*, *Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (government's *Brady/Giglio* obligations extend to materials in the files of investigative agencies); Oct. 28, 2020 Tr. at 26:16-24 (same; citing Due Process Protections Act).

posed a pointed question to the prosecutors about hundreds of thousands of euros that went missing while in Mr. Marin's exclusive custody that the prosecutors and agents asked Mr. Marin the questions that exposed Mr. Marin as a liar. Mones First Sanctions Motion at 12-13, 25-26. The fact that the euros went missing under Mr. Marin's watch was apparent from the face of reporting and photographs available to case agents and AUSAs in mid-2018. *See* ECF No. 122-4, Exhibit D to Mones First Sanctions Motion.

D.  The Prejudice and Hardship the Late Productions Have Caused Mr. Mones

Each of the 16 times the government made a post-plea production, Mr. Mones was prejudiced and substantially burdened. The government should have produced before Mr. Mones' plea, and together with the other discovery in the case, the information about its own Confidential Source. Instead, in dribs and drabs, the government disclosed after Mr. Mones' plea: reports and notes of DHS and DEA agents, AUSA notes, chat chains (first only those between Mr. Marin and defendants and DHS agents, then hundreds of chat chains between Mr. Marin and witnesses and defendants and DEA and other DHS agents), emails, and ultimately hard-copy documents and the contents of nine computers, an external hard drive, and a flash drive seized from Mr. Marin's office.

In addition to causing repeated delays in Mr. Mones' sentencing,[10] the late productions have required Mr. Mones and his family, who have already lost the business that was their main livelihood, to expend hundreds of thousands of dollars to have attorneys, technicians, and forensics experts process, review, and store the serial post-plea productions, to engage in discussions with the government about the productions, to serially revise Mr. Mones' legal strategies, and now to engage in motion practice about the late discovery.

E.  The Sixteenth Attempted Production—of Electronic Data from Nine Computers and Two Drives Seized from Mr. Marin's Office

The last of the productions attempted by the government is comprised of 5.8 terabytes of data, in compressed form.[11] This volume is more than twice the volume of the government's largest pre-plea production, *see* Exhibit A, and the contents are forensic images of nine computers, an external hard drive, and a flash drive seized from Mr. Marin's office.

---

[10] The adjournment letters stating the grounds are ECF Nos. 79, 82, 86, 91, 113. The current sentencing date of November 18, 2020 also has been overtaken.

[11] As a rough measure, the Federal Judicial Center has stated that a terabyte is the equivalent of 500 billion written pages of text. Manual for Complex Litigation (Fourth) § 11.446 (2004).

5

Honorable Alvin K. Hellerstein					November 11, 2020

The Court had set a discovery deadline of October 23, 2020 at a status conference on September 23, 2020, after stating several times that it was "hard" to understand why the government was still collecting and producing discovery. September 23 Conference Transcript ("Sept. 23 Tr.") at 23:10-11, 16-17. The government represented that it had nothing further to produce "at this time" and "at this point," although it "could" collect additional information about Mr. Marin, who had just been arrested. *Id*. at 23:7-9, 12-15. While the government did not say more in response to questions posed by the Court, the very same day it sought a warrant in the Southern District of Florida authorizing the search of the Source's workplace. The search was conducted on September 29, 2020.

The government in each of its other post-plea productions either had uploaded the production to a file sharing site called Box or copied the production to an external drive provided by defense counsel. In either of those forms, the contents—documents, spreadsheets, chats, emails—had been immediately reviewable by counsel upon receipt. On October 9, 2020, the government notified the defendants that it intended to produce approximately eight terabytes of electronic data, comprised of material seized during the search of Mr. Marin's office. It requested defense counsel to provide a hard drive of that volume. Mr. Mones delivered the drive on October 13, 2020.

For ten days, Mr. Mones heard nothing about the loading of the seized data onto the drive. On October 23, 2020, at 4:51 p.m., the government notified counsel that it had uploaded to Box a 1.5 gigabyte production of materials *not* seized from Mr. Marin's office. But it failed to return the drive loaded with the seized materials. It instead stated that because of the volume of that data, and difficulties in copying it to the external drive, it was unable to return the drive containing the data. Instead it offered that Mr. Mones' counsel could travel to DHS offices in Manhattan starting "this weekend"—*i.e.*, after the deadline. At the time, both of Mr. Mones' counsel were planning to be hours outside of the city over the weekend, and neither was regularly working in their New York offices because of the COVID-19 pandemic.

It was not until two days *after* the discovery cut-off, on October 25, 2020, that the government first returned the hard drive purportedly loaded with the electronic data seized from Mr. Marin's offices. Upon opening the drive, however, counsel found that the contents were *not* reviewable as they had been in the prior post-plea productions. The government had provided forensic images of the computers and storage devices seized from Mr. Marin's office, without extracting from those images the reviewable content, as it had done before.

Counsel were forced to stop reviewing that drive in any event after Mr. Mones' forensic expert, Bryan Gorczyk, a former FBI Special Agent and Managing Director of Technology at Renaissance Associates Ltd., discovered that DHS had inadvertently copied onto the drive an internal DHS computer or drive that appeared to contain confidential files and information about other investigations. *See* Exhibit C, ¶ 5 (Declaration of Bryan Gorczyk dated November 10, 2020 ("Gorczyk Dec.")). On

6

November 1, 2020, the government confirmed the error and asked Mr. Mones to destroy the inadvertently produced information. The government first delivered a replacement drive containing the data that DHS had intended to copy on November 2, 2020. Again, what had been loaded was a forensic image from which reviewable contents had not been extracted.

As stated by Mr. Gorczyk in his declaration, merely extracting from the forensic images and making reviewable the material within is a weeks-long process. *See* Ex. C. ¶ 11 (Gorczyk Dec.).

At a conference on October 28, 2020, the Court had encouraged the government to provide an index to the discovery seized from Mr. Marin's office. Oct. 28 Tr. at 24:14-28. Last Friday, November 6, 2020, the government provided a two-page "index" of the production, containing 13 rows or entries. The index provided no elaboration of the materials (documents or communications) contained in the computers or laptops. It rearranges the same information that was already available from search warrant returns and custody receipts. It is thus limited to stating the types of items seized (such as "Lenovo laptop" or "Apple Laptop"), the locations within Mr. Marin's office from which the items were seized, and the volume of the forensic image. *Compare* Exhibit D (Government Index) *with* Exhibit E (DHS Custody Receipts and Search Warrant Return).

The government also stated via email on November 6, 2020 that it "can" provide "all of the materials" in the Sixteenth Production in a searchable format but gave no timetable for completing that task. It stated that it expected to have an updated index by Monday, November 9, 2020. The government has yet to produce the updated document.

## **Argument**

### PLEA AND SENTENCING PROCEEDINGS SHOULD PROCEED FORTHWITH AND THE GOVERNMENT PRECLUDED FROM RELYING ON ITS LATEST ATTEMPTED PRODUCTION

A.  Preclusion Is a Fair and Modest Remedy That Does Not Prejudice the Government

Courts may impose any "just and proper" sanction when the government fails to timely produce *Brady*/*Giglio* information. Oct. 28 Tr. at 26:25-27:8 (under authorities including the Due Process Protections Act, court may order production of exculpatory or mitigating information or specify the terms of production, impose evidentiary sanctions, grant a continuance, impose sanctions on any responsible government lawyer, or dismiss charges); *see also Sadr*, 2020 WL 3057755, at \*\*2-3 (directing U.S. Attorney's Office to respond to questions regarding *Brady*/*Giglio* violations and misrepresentations to Court regarding same); *United States v. Sadr*, No. 18-cr-224 (AJN), 2020 WL 5549931, at \*\*4, 6, & 15 (S.D.N.Y. Sept. 16, 2020)

7

("urg[ing]" investigation by the Office of Professional Responsibility). This Court has already ordered that co-defendant Michols Orsini Quintero may retain a forensic expert and have that expert's fees paid because of the government's late productions. Oct. 28 Tr. at 7:10-24.

It is particularly egregious for the government to back-end an enormous last production within which is buried information *helpful* to Mr. Mones. *See Sadr*, 2020 WL 5549931, at *11 (condemning discussion among AUSAs of "bury[ing]" exonerating trial exhibit); *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("The Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials"; granting new trial on affected counts).[12] As described above, and in Mr. Mones' prior sanctions motion,[13] post-plea productions have clearly included evidence that changed the parties' understanding of the conspiracy, the Source on which the investigation was built, and material to reducing Mr. Mones' sentence and understanding his role. Internal records of Mr. Marin and his company buried within the Sixteenth Production are certain to further substantiate, at a minimum, the full scope of the "side business" carried out by Mr. Mones' conspirators, including Mr. Mones' former employee Leon, without Mr. Mones' participation and at the direction of El Aissami, who is considered by the government to be the most culpable and dangerous of the defendants in this case. More impeachment of Mr. Marin is likely to come to light, including regarding the other truthfulness crimes that the government continues to investigate, like potential immigration law violations by Mr. Marin.

In other words, Mr. Mones has taken and will continue to take responsibility for his conduct, but through late and serial productions, the government is obstructing his ability to present evidence mitigating of his sentence, especially evidence rebutting the government's claim that he is a leader/organizer.

Because Mr. Mones nonetheless remains willing to take responsibility for his crime, and continues to wish to proceed to sentencing, Mr. Mones seeks only an

---

[12] Courts have ordered the government to review and identify *Brady/Giglio* material from within voluminous electronic data, especially where, as here, the defendant is incarcerated or otherwise impaired in his or her ability to help in the review. *United States v. Salyer*, No. s-10-0061 LKK (GGH), 2010 WL 3036444 at **3, 6,7 (E.D. Cal. Aug. 2, 2010), ("at some point, 'disclosure,' in order to be meaningful, requires "identification" as well"; ordering review of gigabytes of information and identification of *Brady/Giglio* material within (citation omitted)); *United State v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack.")

[13] Mones First Sanctions Motion at 3-5, 21-26.

Honorable Alvin K. Hellerstein                                                         November 11, 2020

expeditious sentencing and protection from having the government rely on the last of its 16 productions at that sentencing.

The government itself has acknowledged the appropriateness of preclusion as a remedy for its late post-plea productions. On September 9, 2020, the government made its second-most voluminous post-plea production—nearly 500 gigabytes of data which included hundreds of chat chains of Mr. Marin and other extracted and reviewable data from one computer of Mr. Marin's. When defense counsel inquired about obtaining more user-friendly versions of some of the extracted data, the government responded by stating that it did not intend to "rely on anything that was unique to this production," perhaps excepting the circumstance in which there was a *Fatico* hearing. Exhibit F (Government Email Response of September 14, 2020, to Discovery Questions). Yet, regarding the Sixteenth Production, which is many multiples the size of the September 9 production, the government has categorically refused Mr. Mones' proposal to a similar limitation on the government's use.

Preclusion is also a reasonable remedy because the government has not identified any information within the Sixteenth Production on which it expects to need to rely at Mr. Mones' sentencing. Nor should there be any. The government took the position that Mr. Mones is a "leader/organizer" before any of the post-plea productions, indeed even before his plea. It is eminently fair to deem the government to have forfeited the ability to rely at Mr. Mones' sentencing on information it only saw fit to collect and produce nearly a year *after* the government insisted on a leader/organizer enhancement.

B.   <u>The Grounds for Preclusion Are Clear</u>

The grounds for precluding the government from relying on the contents of the Sixteenth Production—its lateness—are also clear.

First, even setting aside the Court-ordered deadline, it is fundamental that *Brady/Giglio* material must be produced in time for its effective use. *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). That principle is hopelessly violated when sentencing has been adjourned a half-dozen times to await 15 post-plea discovery productions, and the government's last production dumps on the defendant the largest volume of discovery yet, in a form that is unreviewable.

In any event, the government simply failed to make the sixteenth production by the discovery deadline of October 23, 2020. The government delivered *nothing* to Mr. Mones in reviewable form on or before that date. In effect, the government cheated on the October 23, 2020 deadline by lowering the standard of production it had observed in its own prior 15 post-plea productions. It failed to deliver until two days *after* the deadline, on October 25, 2020 *anything* seized from Mr. Marin's offices, in any form. And even the drive it delivered late on that day contained only "images" of the computers and drives taken during the search of Mr. Marin's offices; the

9

Honorable Alvin K. Hellerstein                                                                           November 11, 2020

government managed the delivery only by relieving itself of the step it had taken in all other post-plea productions of extracting reviewable files from those images. Ex. C ¶¶ 6-7. The government basically produced depictions of a production instead of the materials depicted. It foisted on Mr. Mones the time and effort and cost the government should have borne in making the documents, communications, spreadsheets, and other data seized from Mr. Marin's office reviewable. *Id.* ¶ 10-11. (processing and extracting data from images to make contents of production reviewable will be a weeks-long process and cost tens of thousands of dollars in expert fees, even apart from attorney searching and review of the contents).

Also ineffective was the government's hastily arranged substitute measure of inviting defense counsel at 4:51 p.m. on Friday, October 23, 2020, to begin reviewing the massive production at the Manhattan DHS offices on the weekend. Any review could only have started on October 24, 2020, the day *after* the deadline. It was not reasonable to obligate defense counsel to set aside other plans at the last minute and assume COVID-19 risks by traveling into the city and sitting for hours at DHS offices. It would not have been helpful to initiate yet another piecemeal review of whatever could be reviewed by sitting in workplaces other than one's own, during a pandemic.

In sum, the government failed for years to comprehensively and consensually collect and produce information from its own Confidential Source. And despite having had nearly a month after conducting the court-authorized search of Mr. Marin's offices to produce the fruits in reviewable form, the government failed to meet the October 23, 2020 deadline.

Apparently realizing the deficiency in its "production," the government sent an email last Friday, November 6, 2020, saying that it "can" provide "all of the materials" in a "searchable format." But as of this filing it has not done this, and it has given no timetable for doing so. To this day, there has been no "production" of the materials seized from Mr. Marin's offices, according to the standards the government itself observed in 15 prior discovery productions.

## Conclusion

Mr. Mones appreciated this Court's statement that whenever Mr. Mones was prepared to proceed to sentencing, the Court would conduct that sentencing. *See* Sept. 23 Tr. at 27:17-18. Mr. Mones continues to wish to proceed expeditiously to sentencing, where his punishment can be determined on a full record and, if necessary, he can be designated to a facility other than the MCC-NY, where he suffered from COVID-19 earlier his year and conditions remain onerous, to say the least. For the foregoing reasons, Mr. Mones respectfully requests a speedy scheduling of his plea, a firm sentencing date in January 2021, the preparation of a revised PSR on an expedited basis, and that the government be precluded on relying on the contents of the Sixteenth Production, of the electronic data seized from Mr. Marin's offices.

November 11, 2020

<br>

_____  
Christine H. Chung  
CHRISTINE H. CHUNG, PLLC  
14 Murray Street, #236  
New York, New York 10007  
Telephone: 917-685-0423  
christine@thechunglawoffice.com

_____  
Faith E. Gay  
Jordan L. Weatherwax  
SELENDY & GAY PLLC  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: 212-390-9000  
fgay@selendygay.com  
jweatherwax@selendygay.com

cc:   All counsel (via ECF)