# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 19 Cr. 144 (AKH) |
| v. | |
| VICTOR MONES CORO, | |
| *Defendant.* | |

## DECLARATION OF BRYAN GORCZYK IN SUPPORT OF VICTOR MONES CORO'S MOTION FOR DISCOVERY SANCTIONS

I, Bryan Gorczyk, declare under penalty of perjury, pursuant to 28 USC § 1746, as follows:

1.      I am the Managing Director of Technology at Renaissance Associates Ltd. ("Renaissance").  I have held that position since 2011.  Renaissance provides investigative, forensic accounting, and digital forensic examination services.

2.      I am an expert in the field of digital forensic examinations.  Prior to my work in the private sector, I was a Special Agent of the FBI and supervised the FBI's New York Office computer forensic program.  In this capacity, I was trained and certified by the FBI Laboratory as a Forensic Examiner of Computer Evidence and was one of the first eighteen Special Agent Examiners to receive that certification.  I subsequently became the Supervisor of the New York Office of the FBI's computer forensic unit, the Computer Analysis Response Team ("CART"), where I supervised a staff of Special Agent and professional support forensic examiners.

3.     I have conducted examinations of thousands of pieces of digital evidence and have supervised the forensic examination of thousands of pieces of digital evidence, including computers, hard drives, and cellular telephones.  I have personally conducted examinations of digital evidence seized in high profile investigations such as the 1993 World Trade Center bombing, the 1998 bombings of the United States Embassies in Kenya and Tanzania, the September 11, 2001 attacks on the World Trade Center and the Pentagon, and U.S. v. Richard Reid, also known as the "Shoe Bomber" case, among countless others.  Since retiring from the FBI in 2004, I have continued to conduct digital forensic analyses.

4.     Renaissance was retained to aid in the preparation of the defense in Mr. Mones' case in April 2019.  Since that time, we have conducted forensic analyses and examinations of computers, e-mail, cell phone, and other data for the purpose of making that data available for review by counsel.  As part of this process, some of the data that we analyzed was uploaded to an online review platform where searches were conducted, and the data was made available to counsel to review.

5.     Renaissance received a hard drive on October 28, 2020 containing what we were told was a government production (October 28 Drive).  During our initial examination of that drive, we found and reported to defense counsel that the drive contained a forensic image of an internal drive of a DHS computer likely copied and provided to defense counsel by mistake.  On November 4, 2020, Renaissance received a second hard drive ("November 4 Drive") containing a forensic image that had not been contained on the October 28 Drive.  We were told

this was the image that DHS had meant to copy onto the October 28 Drive when it mistakenly included the image of the DHS internal drive.   The image on the November 4 Drive was created on October 30, 2020.

6.     I will refer to the data on the two external drives we received on October 28 and November 4 together as the Sixteenth Government Production.   In our initial review, we found that the data in that Production was collected from twelve computer hard drives and one flash drive.   The data is in the form of forensic images, which are essentially complete copies of the hard drives.   These images were prepared from the hard drives in nine computers (two computers had two drives), an external drive, and a flash drive.   Most of the drives appear to contain data dating back at least to 2017.

7.     The contents of the thirteen forensic images are not reviewable or searchable in the form produced.   To view the data contained in a forensic image, a forensic examiner must first process the data using specialized forensic software. Once that has been accomplished, the examiner can search for and extract data to be reviewed by counsel or according to counsel's directions.

8.     The data in the Sixteenth Government Production must be processed before it can be reviewed or searched.   Some files, like documents or spreadsheets, need only be extracted.   But e-mail, for example, must be put into a form for it to become reviewable.   Accounting data must be extracted and opened in the same software used to create the data.   During my preliminary review of the evidence

under discussion, I noted both e-mail and accounting data in addition to numerous other data types in the PC images.

9.     In addition to PC images, there are images of two Mac computers. Mac computers are more difficult to examine and prepare data for review. I am unable to determine without first processing the Mac data, what kind of materials are there and what processes and tools will be required. Counsel has informed me in a prior production, the government produced an extraction of emails on a Mac computer belonging to Mr. Marin. If the images of the Mac computers in the Sixteenth Government Production contain Mac e-mails, those emails must be processed via specialized tools in order to get them into a form in which they can be reviewed or searched by counsel. It is a different and more complicated process than extracting emails from a PC.

10.     Extracting and processing data from the thirteen forensic images will require many hours and be a costly process. I would expect a forensic examiner to spend between six and twelve hours per forensic image, searching for data, extracting it, and then putting it into a form where it can be reviewed by counsel. So, in total it may take between approximately 72 and 144 hours of billable forensic examination time to extract and process the data in the Sixteenth Government Production to make it reviewable and searchable. At an hourly rate of $375/hour, this translates to approximately $27,000 to $54,000 in expenses. These expenses will be incurred apart from attorney time to review or search the material or to direct us or coordinate with us.

11.    I estimate that it will require approximately three weeks for Renaissance to complete the processing all the images and extract the reviewable data.  It is only after extraction that counsel can begin to review.

12.    Some prior government productions in this case have been hosted in an online review platform, like Relativity, to facilitate an organized data review.  A review platform is commonly used to streamline review and to allow for collaborative review, commenting, and tagging.  While the quantity of data that will potentially be hosted can't be known until the images are processed and examined, it would not be out of the realm of possibility for it to cost between six and ten thousand dollars to add that data to the platform.  The monthly charges that Mr. Mones is already incurring for the hosting of data will also be increased if data from the Sixteenth Government Production is added to the review platform.

13.    I have reviewed the two-page "Index" prepared by the government and furnished to defense counsel on November 6, 2020.  That index does not report information based on a review of the contents of the hard drives (the documents or emails contained in the drives).  Instead it lists the drives, their approximate volumes, and identifies the locations in which the drives were collected.

14.    The approximate total volume of data reported in the government-produced index is 5.8 terabytes.  The data was compressed to that volume; without compression the volume would be higher.

15.    The approximate total volume of 5.8 terabytes (compressed) reported in the government index includes user generated files and non-user-generated files,

like operating system files, program files, and space not used by users or the operating system.  It is not possible to know the breakdown of user and non-user generated files without further processing the data.  The volume of the Sixteenth Government production is more than double that of the government's production dated June 28, 2019.  While we have not been asked to process or review every government production in this case, defense counsel has informed me that the June 28, 2019 production is the largest prior production of the government, either before or after Mr. Mones' plea.

Dated: New York, New York
      November 10, 2020

Bryan Gorczyk

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have been served with copies of the foregoing Declaration of Bryan Gorczyk in Support of Victor Mones Coro's Motion for Discovery Sanctions, and the exhibits attached thereto, via ECF, this 11th day of November, 2020.

_____
Jordan L. Weatherwax