

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 10, 2020

**BY ECF AND EMAIL**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Michols Orsini Quintero*, *et al.*, **19 Cr. 144 (AKH)**

Dear Judge Hellerstein:

    The Government writes (1) in opposition to Michols Orsini Quintero's ("Orsini") memorandum, filed on December 2, 2020 (Dkt. No. 148 ("Def. Mem.")), seeking release pursuant to 18 U.S.C. § 3142(i), and (2) in response to the Court's December 8, 2020 Order (Dkt. No. 153) requesting information regarding the application of the Sentencing Guidelines.

    **I.**    **The Court Should Deny Orsini's § 3142(i) Motion**

    The Court concluded in a November 24, 2020 Order that Orsini presents a flight risk and has not demonstrated an inability to review discovery while incarcerated. (Dkt. No. 144). His subsequent submission does not alter these conclusions. Orsini's counsel has not even retrieved the discovery, further undercutting any argument about purported burdens associated with the review of those materials. Accordingly, for the reasons set out below, and those set forth in the Government's Opposition Brief of November 23, 2020 (*see* Dkt. No. 142), this Court was correct in denying Orsini's initial bail application and should deny the instant application for release under Section 3142(i).

    **A.**  **Applicable Law**

    Pursuant to 18 U.S.C. § 3142(i), after a defendant has been ordered detained prior to trial, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Notably, Section 3142(i) does not permit a court to abrogate its analysis of whether a defendant poses a danger to the community or a risk of flight. *See, e.g.*, *United States v. Chambers*, No. 20 Cr. 135 (JMF), Dkt. No. 70 (S.D.N.Y. Mar. 31, 2020) (noting

Case 1:19-cr-00144-AKH   Document 157   Filed 12/10/20   Page 2 of 5

Page 2

that release under Section 3142(i) must be "balance[d] . . . against the risks that were previously identified and resulted in an order of detention"); *see also United States v. Rico*, No. 18 Cr. 661 (PGG), 2020 WL 1934989, at *6 (S.D.N.Y. Apr. 21, 2020) (denying release under Section 3142(i) "given the risk of flight and danger to the community that [the defendant] presents").

### B. Discussion

Orsini's need to prepare his defense does not warrant the extreme remedy of temporary release. On November 24, 2020, the Court determined that Orsini's "capabilities as a pilot of chartered aircraft make him a flight risk." (Dkt. No. 144).[1] The Court found in the same Order that Orsini "has not shown an inability to process the government[']s production while remaining in detention." (*Id.*). He has not yet tried. The Government made forensic copies of the materials available to Orsini over a month and a half ago but counsel has thus far declined to provide a hard drive to obtain the discovery. Orsini cannot be entitled to the extraordinary remedy of release based on a hypothetical concern about a discovery review he has declined to commence. Moreover, consistent with the Court's November 24 conclusion that the defendant failed to demonstrate that he and his counsel cannot process and review the discovery while detained, other courts have found that voluminous discovery alone does not warrant temporary release. *See United States v. Gilmore*, No. 19 Cr. 724 (JGK), Dkt. No. 61 (S.D.N.Y. Aug. 10, 2020) (denying release under § 3142(i) despite being weeks away from scheduled trial date and finding that "[p]retrial detention has existed for complex cases expected to last months involving extensive discovery and the opportunity for defendants to review extensive discovery should they so desire"); *United States v. Dupree*, 833 F. Supp. 2d 241, 249 (E.D.N.Y. 2011) (finding that "the complexity of [a] case and volume of information at issue[,]" alone, are not sufficiently compelling to find that defendant's release is "necessary" for the preparation of his defense under § 3142(i) and that while release "would certainly make it more convenient for [defendant] and his counsel to prepare his defense, his release is not necessary for the preparation of his defense under 18 U.S.C. § 3142(i)"). Finally, while Orsini's counsel claims that review of the discovery "requires the coordinated availability and participation of defense counsel, a Spanish interpreter, and Mr. Orsini Quintero," she does not explain why that review cannot be accomplished via video-conferencing from the Metropolitan Correctional Center ("MCC"). Indeed, Orsini also fails to explain how this remote review of the discovery would be conducted any differently were Orsini to be released to the Middle District of Florida, as requested. (Def. Mem. at 2). To the extent Orsini is unable to prepare for trial as the trial date nears, the appropriate remedy is an adjournment to allow the defense an adequate opportunity to prepare for trial. It is not to release a defendant who, as the Court already found, presents an unacceptable risk of flight.

None of decisions cited by the defendant in support of release counsel for a different conclusion. In *United States v. Persico*, 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986), the court

---

[1] Orsini's memorandum seeking release pursuant to § 3142(i) also makes several misleading claims regarding his ability to flee on a private plane in an effort to convince the Court that he does not pose a flight risk. (*See* Def. Mem. at 5). While none of those claims should alter the Court's conclusion that Orsini presents a flight risk, the Government is prepared to address these arguments at the remote hearing scheduled for December 11, 2020, to the extent a response would assist the Court in resolving Orsini's pending motion.

denied temporary release to the defendant and found that the defendant's "access to a telephone on a regular basis," among other things, was sufficient to allow him to prepare for trial. The decision in *United States v. Hossain*, No. 19 Cr. 606 (SHS) is similarly inapposite: Judge Stein concluded that the defendant in that case—unlike Orsini—*did not* pose a risk of flight. The decision to grant release in *United States v. Stephens*, 447 F. Supp. 3d 63, 64 (S.D.N.Y. 2020), was premised on a combination of factors not present in this case, including the need to facilitate the defendant's preparation for an imminent hearing (less than a week after the court's ruling), and the fact that the primary evidence the Government previously relied upon to establish that the defendant had committed the charged crime and posed a danger to the community was "undermined by new information not available to either party at the time of the [earlier detention] hearing." *Id.* at 2. Here, Orsini focuses on the volume of discovery, most of which he has declined to pick up much less review, and he has not identified any aspect of the evidence that undercuts the Court's conclusion regarding flight risk. The other in-district cases cited by the defendant also presented situations where the COVID-19 pandemic, then in its infancy, prevented communication between the defendants and their attorneys. *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120 (S.D.N.Y. Mar. 31, 2020) (granting release five weeks before trial because defense counsel was prohibited from visiting or conducting video conferences with client); *United States v. Nunez*, No. 20 Mag. 1734 (KHP), 2020 WL 1911226 (S.D.N.Y. Apr. 20, 2020) (granting release because defendant's "unique circumstances place[d] him at higher risk" of contracting and suffering from COVID-19 and noting that defense counsel was unable to communicate with her detained client). Here, Orsini's defense counsel acknowledges that she has been able to visit her client. (Def. Mem. at 2). Moreover, should in-person visits again be limited at the MCC, counsel will continue to have the full opportunity to confer with Orsini through video-conferencing or private phone calls.[2]

Orsini also claims that the strength of the Government's case—and in particular, the proof that Orsini knowingly violated sanctions—is "not strong." (Def. Mem. at 6). But Orsini has overlooked several important pieces of evidence that demonstrate his guilt. First, during Orsini's August 2018 interview with HSI, he flatly admitted knowing that Samark Lopez Bello and Tareck El Aissami "were sanctioned and lost properties," and there can be no reasonable dispute that he provided services to these sanctioned parties with that conceded knowledge. (*See* Def. Mem., Ex. A at 3). Second, Orsini admitted that he and his co-conspirators used code names for El Aissami and Lopez Bello and that they intentionally omitted the sanctioned individuals from flight passenger manifests, further evidencing Orsini's knowledge of the illicit nature of these flights. Third, Orsini continued to illegally provide flight services to Lopez Bello in violation of sanctions *after* HSI put Orsini on notice of the illegal nature of his conduct during the August 2018 interview.

---

[2] The out-of-circuit cases cited by the defendant are also unavailing. In *United States v. Pimental*, No. 19 Cr. 300 (EJF), 2020 WL 2064046, at *2-3 (D. Utah Apr. 29, 2020), the court overturned the magistrate judge's decision to order a temporary release and ordered the defendant's continued detention. And in *United States v. Kennedy*, No. 18 Cr. 20315 (JEL), 2020 WL 1493481, at *3 (E.D. Mich. Mar. 27, 2020), the court found that the defendant's "particular vulnerability to [COVID-19] constitute[d] a compelling reason for release."

Orsini has not addressed any of this evidence, instead making self-serving and conclusory claims about the strength of the Government's case. This proof powerfully establishes that he acted with the requisite intent. *Cf. Bryan v. United States*, 524 U.S. 184, 190 (1998) (affirming instruction that "[a] person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something the law forbids."); *see also United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 147 (2d Cir. 2004) (same). Therefore, the strength of the Government's case is one of several reasons that warrant continued detention, particularly in light of the Court's findings to date regarding Orsini's flight risk.

For all of these reasons, and the reasons put forth in the Government's Opposition Brief of November 23, 2020 (*see* Dkt. No. 142), the Court should deny Orsini's application for temporary release pursuant to § 3142(i).

## II. The Applicable Sentencing Guidelines Ranges

In response to the Court's December 8, 2020 Order, the Government currently believes that the Guidelines apply to the crimes charged in the Indictment as follows:[3]

### A. Mones

Consistent with the calculations in the January 24, 2020 Presentence Investigation Report relating to Mones (PSR ¶¶ 54-64), except for an adjustment for acceptance of responsibility that may ultimately apply if Mones elects to plead guilty as he has claimed he intends to do, the Government currently believes that the applicable Guidelines range is 97 to 121 months' imprisonment based on Criminal History Category I and an offense level of 30, calculated as follows:

- Pursuant to U.S.S.G. § 3D1.2(b), each of the charged offenses should be grouped together ("the Group") because they constitute part of a common scheme or plan. As a result, pursuant to U.S.S.G. § 3D1.3(a), the highest offense level applicable to the charged offenses governs, which is 30 with respect to each Count based on the calculations below with respect to Count One.

---

[3] The foregoing Guidelines calculations are based on facts and information currently known to the Government. Nothing in this letter limits the right of the Government (1) to change its position at any time as to the appropriate Guidelines calculation in this case, even if that change is based, in whole or in part, on information that was in the Government's possession as of the date of this letter; and/or (2) to present to the Court or the United States Probation Office, either orally or in writing, any and all facts and arguments relevant to sentencing that are available to the Government at the time of sentencing. Nor does anything in this letter limit the right of the Government to seek a departure under or variance from the Guidelines, or to take a position on any departure or variance that may be suggested by the Court, the United States Probation Office, or either defendant.

Page 5

- Pursuant to U.S.S.G. §§ 1B1.2(a) and 2X5.1, the most analogous Guideline for purposes of the offense charged in Count One is U.S.S.G. § 2M5.1.

- Pursuant to U.S.S.G. § 2M5.1(a), the base offense level is 26 because national security controls, specifically the Foreign Narcotics Kingpin Designation Act and Kingpin Act regulations, were evaded.

- Pursuant to U.S.S.G. § 3B1.1(a), the offense level is increased by four levels because the defendant was an organizer or leader of criminal activity that involved five or more participants and was otherwise extensive.

- In accordance with the above, the applicable Guidelines offense level for Count One is 30.

### B. Orsini

As to Orsini, who has indicated that he plans to proceed to trial, the Government currently believes that the applicable Guidelines range is 63 to 78 months' imprisonment based on Criminal History Category I and an offense level of 26, calculated as follows:

- Pursuant to U.S.S.G. §§ 1B1.2(a) and 2X5.1, the most analogous Guideline for purposes of the offense charged in Count One is U.S.S.G. § 2M5.1.

- Pursuant to U.S.S.G. § 2M5.1(a), the base offense level is 26 because national security controls, specifically the Foreign Narcotics Kingpin Designation Act and Kingpin Act regulations, were evaded.

- In accordance with the above, the applicable Guidelines offense level is 26.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by: \_\_\_/s/_____
Samuel Adelsberg
Amanda L. Houle
Assistant United States Attorneys
(212) 637-2494/2194

cc: Defense counsel (by ECF)